UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

v.

08CR68A

**Report
&
Recommendation**

CHARLES M. FELIX,

Defendant.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 19).  The instant matter before the Court is defendant's motion (Docket No. 23[1]) to

suppress statements and physical evidence (id. Def. Atty. Aff. ¶¶ 50-58), discovery and other

disclosure motions.  In particular, defendant moves for production of Brady materials and

impeachment evidence before trial; revelation of the identities of informants; disclosure of

Federal Rule of Evidence 404(b) materials; Federal Rule of Criminal Procedure 16 discovery and

Rule 12 notice of intention; production of Jencks Act materials; search of Government agents'

personnel files; preservation of evidence; disclosure of Federal Rule of Evidence 807 residual

exception statements (id. Def. Atty. Aff. ¶¶ 6, 7-9, 10-14, 15-26, 27-29, 30-37, 39, 38, 41-4, 45-

48, 49).  Defendant also moves for filing of a Bill of Particulars specifying defendant's

---

[1]In support of this motion, defendant submitted his attorney's affidavit, Docket No. 23, and his post-hearing memorandum, Docket No. 31.
    In opposition, the Government submitted its Response, Docket No. 26, and its post-hearing memorandum, Docket No. 32.

knowledge of the firearm, whether he possessed it knowingly and unlawfully, whether it was a semi-automatic rifle or semi-automatic assault weapon, and whether it was operable (id. ¶ 40). For judicial efficiency, matters that could be considered in a separate Order will be decided in this Report & Recommendation.

Initially, responses to the defense motion were due by June 17, 2008, with argument scheduled for June 18, 2008 (Docket No. 20).  The Court ordered a suppression hearing be held (Docket No. 26) and it was conducted on July 15, 2008 (Docket No. 30 (transcript), text minute entry of July 15, 2008).  After the hearing and post-hearing briefing (Docket Nos. 31 (defendant), 32 (Government), both filed September 18, 2008), the motion was deemed submitted as of September 18, 2008.

## BACKGROUND

Defendant was indicted, on March 18, 2008, on one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and the Government sought to forfeit firearms and ammunition found in the possession or immediate control of defendant at the time of his arrest (Docket No. 17, Indict.).  Defendant, having been convicted of felonies in Florida in 2000 and in Erie County, New York, in 2005, was charged with possessing a Savage Arms, model 954 Stevens .22 caliber semi-automatic rifle on February 10, 2007 (id., Count I), which the Government sought to be forfeited upon conviction (id., Count II).

Defendant contends that, on February 10, 2007, the Buffalo Police Department received a tip that a black man was walking the streets of Buffalo carrying a long rifle which he was attempting to sell and that he was concealing the rifle in his pants (Docket No. 23, Def. Atty. Aff. ¶ 51).  Upon receiving this description, two police officers approached and detained defendant,

2

who was walking at the intersection of Peckham and Stanton Streets (id. ¶ 52).  Defendant denies

any criminal activity when he was approached and, after a pat down search, defendant had no

weapons on his person (id. ¶¶ 53, 54).  Defendant concludes that the only basis for his stop by

police was the tipster's description of an armed black man and the police thus had no justification

to engage in a Terry stop of defendant, see Florida v. J.L., 529 U.S. 266, 273 (2000) (id. ¶¶ 55,

56).  Defendant then was transported to 92 Sherman Street, where he made incriminating

statements (id. ¶ 54).  Defendant moved for an evidentiary hearing (id. ¶ 58) and suppression of

all evidence and statements obtained as a result of this stop (id. ¶ 57).

 The Government initially argued that defendant's statements were obtained in a

constitutional manner, but consented to an evidentiary hearing (Docket No. 25, Gov't Response

at 15).

*Evidentiary Hearing*

 A suppression hearing was conducted on July 15, 2008 (Docket No. 30).  The

Government produced five Buffalo Police officers involved in the stop and search of defendant

to testify at the suppression hearing (see Docket No. 30).  First, officer Michael Beavers testified

that, while off duty, he was in a delicatessen on Sherman and William Streets when one of the

deli workers told him about a black man carrying a rifle he intended to sell (Docket No. 30, Tr. at

4-5).  The store owner showed Beavers the store's security videotape, a week or two before

February 10, 2007, depicting the man trying to sell the firearm and obtained a description of the

clothes worn by that man from the store owner (id. at 7-9, 21) and identified the man in that

videotape as "Felix," a customer in that store (id. at 12).  Beavers then called his district

headquarters to report this (id. at 5-6).  On February 10, Beavers then drove north up Sherman

Street and saw a man fitting the description he saw in the videotape walking south on that street, the man Beavers identified as the defendant (id. at 10-11).  Beavers was called later that afternoon by the store owner, who said that "Felix" was bringing a gun to sell to them (id. at 16). Beavers drove to Stanton (or Shumway Street) and Peckham to see if "Felix" matched the person depicted in the store security videotape (id. at 18) and he did.  Police converged upon defendant at Stanton and Peckham (id. at 13), when Beavers left (id. at 13, 19).

Officer John Poisson of the Mobile Response Unit of the Buffalo Police Department next testified (id. at 26-27).  On February 10, 2007, Poisson and his partner Bill Gambino were conducting surveillance of a house on Sherman Street based on the tip (conveyed by Beavers) that someone was attempting to sell a firearm to a deli owner at Sherman and William (id. at 27-28).  Beavers had told Poisson that a black man who lived on Sherman Street, just north of William, was attempting to sell a long gun to one of the employees at the deli and Beavers gave Poisson a description of that man (id. at 29).  Beavers then confirmed to Poisson that defendant was the person Beavers described and sought for the weapons transaction (id. at 30, 38). Defendant was wearing a down jacket, heavy sweat pants and was seen leaving 92 Sherman before his apprehension on Peckham (id. at 31-32).  The officers believed the defendant was armed and approached him with guns drawn (id. at 31, 32-33).

Poisson was among other officers at 92 Sherman when a Jacqueline Lewis signed a permission to search (id. at 33-34, Gov't Ex. 2) allowing the officers to search the house. Poisson testified that firearms and ammunition were found in the house (Docket No. 30, Tr. at 33).  Poisson testified that no threats or promises were made to Lewis to get her to sign the permission (id. at 34).  Lewis, however, was not called as a witness.

4

Officer David Cieply testified that defendant remained in his patrol car while 92 Sherman Street was being searched (id. at 70). While there, defendant asked Cieply "what was going on?" (id. at 72). Defendant then stated that his wife bought the rifle and that he was trying to sell it to "the 'Arab at the corner'" (Docket No. 32, Gov't Memo. at 5; quoting Docket No. 30, Tr. at 72).

Lieutenant Al Liberatore later advised defendant of his Miranda rights (Docket No. 30, Tr. at 50). Defendant then stated that he did not have a gun, and that he was going to sell it at the store (id. at 51-52).

Lieutenant Liberatore then spoke with Lewis at 92 Sherman to locate the gun in the house. He asked Lewis for permission to search the house and Lewis granted it. (Id. at 52-54.) After the signing of the consent to search, officers found a firearm and ammunition (id. at 34-35, 55, 82, 83).

Defendant did not call any witnesses.

## DISCUSSION

I.    Motion to Suppress

Defendant challenges the basis for the police stopping him, whether the requisite suspicion was raised to warrant a Terry[2] stop under Florida v. J.L., supra, 529 U.S. 266, 270, given the absence of any indicia of reliability, or the basis of the tipster's knowledge or his veracity. Even if there was reasonable suspicion to stop defendant, he argues that suspicion dissolved when no weapon was found on him (Docket No. 31, Def. Memo. at 6-7). He complains that, nevertheless, he was arrested without probable cause (see id. at 8). Further, he

---

[2]Terry v. Ohio, 392 U.S. 1 (1968).

5

argues that he was not advised of his <u>Miranda</u> rights prior to making statements to the police.  He also disputes whether the police obtained consent to the search at 92 Sherman.

The Government argues that the police actions were justified and did not violate defendant's rights.  A resident of 92 Sherman, Jacqueline Lewis, orally gave consent and signed a permission form giving officers the right to enter and search the premises.  (Docket No. 25, Gov't Response at 15.)  The Government argues that defendant's statements were constitutionally obtained (<u>id.</u>).

      A.      Anonymous Tip and Stop of Defendant

           1.      Anonymous Tip

The Supreme Court in <u>Florida v. JL</u> considered whether law enforcement could constitutionally rely upon an anonymous tipster to justify arresting a suspect, 529 U.S. 266 (2000).  Like this case, the anonymous tip was that a black male was carrying a gun, but unlike this case the description added that it was a young man wearing a plaid shirt at a particular bus stop was carrying the weapon, <u>id.</u> at 268.  As with this case, there was little known about the anonymous source for the tip, <u>id.</u>  The <u>JL</u> Court held that, while that tip may have correctly identified the accused person, that tip alone did not establish the basis for the tipster's knowledge of a concealed crime, <u>id.</u> at 272, and that the tip lacked predicate information to allow the police to test the informant's knowledge or credibility, <u>id.</u> at 271.  The <u>JL</u> Court also rejected a blanket "firearm exception" to <u>Terry</u>, <u>id.</u> at 272-74, while recognizing the police's prerogative to conduct protective searches of persons already legitimately stopped, <u>id.</u> at 274.

Defendant argues here that the tip's description of a black man carrying a rifle that he was trying to sell alone was not a reasonable suspicion to conduct an investigative detention (Docket

No. 23, Def. Atty. Aff. ¶ 56).  The Government contends that this case differs from <u>JL</u> due to the amount of information known here before defendant was stopped (Docket No. 32, Gov't Memo. at 6).  In this case, the initial tipster was a deli owner known to Officer Beavers (the second informant), who advised Officer Beavers of the criminal activity on two occasions.  The owner reviewed his surveillance tapes and confirmed defendant's identification.  Officer Beavers himself then spotted defendant and confirmed that he was the person attempting to sell firearms.  (<u>Id.</u>)  The Government concludes that the deli owner's information was reliable and supported Beavers' later observations (<u>id.</u> at 6-7).  The Government concludes that this is an instance where "an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop,'" <u>id.</u> at 270 (quoting <u>Alabama v. White</u>, 496 U.S. 325, 327 (1990)) (<u>id.</u> at 7), overcoming the common difficulty with anonymous tips that they "seldom demonstrate[] the informant's basis of knowledge or veracity," <u>Alabama v. White</u>, <u>supra</u>, 496 U.S. at 329, <u>quoted in</u> <u>JL</u>, <u>supra</u>, 529 U.S. at 270.

Defendant argues that, even if there was reasonable suspicion to commence an investigative detention (and defendant questions even this, doubting the reliability of both informants, Docket No. 31, Def. Memo. at 7), this suspicion was removed when defendant was searched and no weapon (and especially no rifle) was found on his person (<u>id.</u> at 6-7).

The Government did not call the deli owner as a witness, but had Officer Beavers testify and he was cross-examined on his own veracity as well as his perception of the veracity of the deli owner he relied upon for that tip.  Unlike <u>JL</u>, however, there was a one week gap in time between the initial tip by the deli owner and the detection and stop of defendant.  What was not known was whether the person identified by the tipster as the defendant was presently carrying a

firearm for sale.  The identification portion of this anonymous tip was corroborated and provided

predicate information to Officer Beavers to verify whether the defendant was the correct suspect.

The tip both identified the physical appearance of the suspect and the potential concealed illegal

activity.  The Government has shown the corroboration and reliability of that information (from

prior observations by Officer Beavers and reports by the deli owner) to provide reasonable

suspicion that defendant may still have the firearm in his possession at the later period.  Thus,

**there was a reasonable suspicion** to justify stopping the defendant and, under the prerogative

acknowledged by the JL Court, conduct a protective search of defendant for such a firearm on his

person, see JL, supra, 529 U.S. at 274; Terry, supra, 392 U.S. at 27; see United States v.

McCargo, 464 F.3d 192, 200 (2d Cir. 2006); United States v. Muhammed, 463 F.3d 115, 123-24

(2d Cir. 2006).  Defendant should **not** have this evidence suppressed on this basis.  The next

issue is the conduct of that Terry stop.

        2.    Terry Stop

This Court evaluates the validity of a Terry stop by considering the totality of the

circumstances, United States v. Arvizu, 534 U.S. 266, 273 (2002); Florida v. Bostick, 501 U.S.

429, 439 (1991); United States v. Sokolow, 490 U.S. 1, 8 (1989) (Docket No. 32, Gov't Memo.

at 8).  The investigative detention of a Terry stop is based on reasonable suspicion, which is less

than the probable cause required to arrest that person, Sokolow, supra, 490 U.S. at 7 (see id.).

As stated above, the police has reasonable suspicion to conduct the Terry stop.  After

searching defendant and not finding any weapon on him (Docket No. 30, Tr. at 41), this

suspicion ceased.  The police needed a new basis to continue detaining him and needed probable

cause to go beyond mere temporary detention to arrest defendant.

8

B.      Arrest of Defendant

Defendant next argues that he was placed under arrest when pushed against the wall and told by police officers not to move (Docket No. 31, Def. Memo. at 7 & n.4), see United States v. Moreno, 897 F.2d 26, 31 (2d Cir.) (police pushing suspect against wall held to constitute an arrest, requiring probable cause), cert. denied, 460 U.S. 491 (1990).  This detention was compounded when defendant was handcuffed and placed in a police car (id. at 8, 3) and transported to 92 Sherman Street.  The Government does not address this; it merely argues that the officers reasonably drew their weapons during the Terry stop and did not make the stop into an arrest (see Docket No. 32, Gov't Memo. at 11-12).  No explanation is given why defendant (after being searched and found not to possess a weapon) was placed in a police car.  The Government only argues that, "in an effort to continue their investigation" the police officers transported defendant to 92 Sherman Street (see id. at 4), without stating the reasonable suspicion that defendant was then engaged in criminal activity.

A person is seized under the Fourth Amendment when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," United States v. Mendenhall, 446 U.S. 544, 554 (1980); see Florida v. Royer, 460 U.S. 491 (1983) (air traveling defendant as a practical matter was under arrest when agents seized his ticket, luggage, and identification) (id. at 7).

The reasonable suspicion for a Terry stop can mature into probable cause for a seizure and arrest, United States v. Gomez, 495 F. Supp. 992, 1003, 1005 (S.D.N.Y. 1979); see Sibron v. New York, 392 U.S. 40, 76 (1968) (Harlan, J., concurring in the result) (companion case to Terry, noting that "escalating encounter" between police and citizen may start as conversation

and end with imprisonment).  But here, the reasonable suspicion that justified the stop, that

defendant may have been carrying a firearm, dissipated when he was searched and nothing was

found.  By going beyond detention of defendant for a <u>Terry</u> stop by handcuffing him and placing

him in a patrol car to be relocated against his will constitutes an arrest.  The officers here lacked

reasonable suspicion, much less the probable cause required to arrest.  As noted by this Court,

> "Probable cause exists when the authorities 'have knowledge or reasonably
> trustworthy information of facts and circumstances that are sufficient in
> themselves to warrant a person of reasonable caution in the belief that (1) and
> offense has been or is being committed (2) by the person to be arrested.'  <u>United
> States v. Jenkins</u>, 876 F.2d 1085, 1089 (2d Cir. 1989) (citations and internal
> quotation marks omitted); <u>see also</u> <u>Dunaway v. New York</u>, 442 U.S. 200, 208
> (1979); <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111 (1975).  A 'probable cause
> determination does not require proof beyond a reasonable doubt; it is the mere
> probability of criminal activity, based on the totality of the circumstances, that
> satisfies the Fourth Amendment.'  <u>Hahn v. County of Otsego</u>, 820 F. Supp. 54, 55
> (N.D.N.Y. 1993), <u>aff'd</u>, 52 F.3d 310 (2d Cir. 1995).

<u>United States v. Nelson</u>, 931 F. Supp. 194, 197 (W.D.N.Y. 1996) (Larimer, Ch. J.). The

Government here offers no proof of an additional fact after defendant's search to justify his

continued and escalated detention.

From the totality of the circumstances, defendant was effectively under arrest when he

was handcuffed and placed in the police car for transportation to his house, <u>see</u>  <u>United States v.

Delgado</u>, 797 F. Supp. 213, 218-19 (W.D.N.Y. 1991) (Skretny, J.); <u>see also</u> <u>People v. Bloyd</u>,

416 Mich. 538, 552, 331 N.W.2d 447, 454 (1982) (noting stigma associated with detention in a

police car).  Relocating a suspect during an investigative stop without probable cause is only

justified by reasons of safety and security, <u>Royer</u>, <u>supra</u>, 460 U.S. at 505; <u>see also</u> <u>State v. Griffin</u>,

459 A.2d 1086, 1090 (Me. 1983) (holding that stopping a suspect in his vehicle and placing him

a police car was not an arrest).  Here, no such justification was given for transporting defendant.

Thus, transportation of a suspect (and placing him in the police vehicle to do so) "should be dependent upon knowledge that a crime has been committed" and is impermissible where no crime has been committed and the police act upon mere suspicion, Bloyd, supra, 416 Mich. at 550, 331 N.W.2d at 453; 4 Wayne R. LaFave, Search and Seizure, § 9.2(g), at 80 (3d ed. 1996).

Here, the officers were acting based upon mere suspicion that if defendant did not have the firearm on his person he may well have it in his house.  As discussed below regarding the search of those premises and defendant's statement, that suspicion only gained steam after defendant made incriminating statements.  The evidence therefore should be **suppressed**.

C.      Search of 92 Sherman Street

Assuming the subsequent search is not poisoned by defendant's stop and arrest, the issue surrounding the search defendant's of 92 Sherman premises is whether requisite consent was given for that search.  The Government argues that an occupant of that house, Jacqueline Lewis, consented (orally and in writing) to the search and that she was authorized to give such consent (Docket No. 32, Gov't Memo. at 12-13).

Lieutenant Liberatore, informed by Officer Cieply of defendant's admission that he had a gun in the house, sought permission to search the house from Lewis (see Docket No. 31, Def. Memo. at 4).  So defendant's un-Mirandized statements lead to the search of 92 Sherman.  The question is whether a third party's consent avoids the taint.  While aware that 92 Sherman was defendant's house, the officers waited until after defendant made his incriminating statements (and after searching his person and not finding the weapon) before seeking to search that address (see Docket No. 30, Tr. at 29; Docket No. 31, Def. Memo. at 2 (police surveillance on Sherman Street, with house and store visible to officers)).  The police's interest in searching that house

11

was not independent of the detention of defendant and certainly was not separated from his

subsequent statements.

Therefore, the items seized from 92 Sherman Street should be **suppressed**.

D.      Statements

Defendant also seeks to suppress statements he made to Officer Cieply purportedly after

defendant was placed under arrest, although Cieply did not place defendant under arrest and

testified that he did not know that defendant then was arrested (Docket No. 31, Def. Memo. at 4).

Defendant argues that his statements should be suppressed either because he was not advised of

his Miranda rights (id. at 3, 4 n.3) or because the statements themselves were fruit of the illegal

stop, detention and arrest of defendant (see id. at 9-10).

In addition to its arguments upholding the stop and subsequent actions, the Government

contends that defendant made his statements to Officer Cieply voluntarily and defendant was not

being interrogated (Docket No. 32, Gov't Memo. at 4-5, 13, 14-15; Docket No. 30, Tr. at 72).

Miranda does not attach to volunteered statements, United States v. Vigo, 487 F.2d 295 (2d Cir.

1973).  Cieply testified that "he believe[d]" that Lieutenant Liberatore advised defendant of his

Miranda rights before defendant spoke to Cieply (Docket No. 30, Tr. at 70, 75).  But Lieutenant

Liberatore testified that, before he advised defendant of his Miranda rights, defendant had spoken

with Cieply and made incriminating statements about having the gun in his house and Liberatore

advised defendant of his rights then (id. Tr. at 49-50).

While the Government has established that defendant's statement to Officer Cieply was

voluntary and not during interrogation, it was rendered fruit of the unlawful detention.  On that

basis, the statement also should be **suppressed** and defendant's motion to suppress his statement and evidence seized should be **granted**.

II.     Bill of Particulars

Defendant seeks a Bill of Particulars to state what indicates that he had knowledge that he possessed a firearm, whether he possessed it willfully and unlawfully, whether the firearm was a semi-automatic rifle or semi-automatic assault weapon, and whether the firearm was operable (Docket No. 23, Def. Atty. Aff. ¶ 40).   The Government notes that "very liberal pretrial discovery has been provided in this case," belying the need for particularization (Docket No. 25, Gov't Response at 9).

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars, and it is within this Court's discretion to order such a filing, Wong Tai v. United States, 273 U.S. 77, 82 (1927) (id. at 14).   Bills of Particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial.   United States v. Torres, 901 F.2d 205 (2d Cir. 1990) (id. at 11). The Government is not obligated to "preview its case or expose its legal theory," United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977), nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir. 1967).

Upon review of the Indictment, the Court finds that defendant **is not** entitled to a Bill of Particulars inasmuch as he is sufficiently advised of the charges against him to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect the defendant from double jeopardy.   The items defendant wants particularized–indications of his mens rea, whether

13

the firearm is a semi-automatic weapon and whether it was operable–go to Government's theory

of the case and need not be particularized.  The motion for this relief **is denied**.

III.     Discovery and Disclosure Relief

     A.     <u>Brady</u> Material

Defendant next has requested that the Government disclose all materials potentially

favorable to each of them, including information to be used for the impeachment of the

Government's witnesses, as required under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its

progeny (Docket No. 23, Def. Atty. Aff. ¶¶ 6, 7-9, 10-14).  <u>Brady</u> material, as those cases have

come to define it, includes all evidence which may be favorable to the defendant and material to

the issue of guilt or punishment.  Such evidence includes "[a]ny and all records and/or

information which might be helpful or useful to the defense in impeaching . . . [and] [a]ny and all

records and information revealing prior misconduct . . . attributed to the [Government's]

witness."  <u>United States v. Kiszewski</u>, 877 F.2d 210 (2d Cir. 1989).

Defendant's motion identifies numerous specific categories of documents encompassing

both exculpatory and impeachment <u>Brady</u> materials which they seek to obtain.  The

Government's written response is that it acknowledges its <u>Brady</u> obligation, agreeing to provide

impeachment <u>Brady</u> materials pursuant to this Court's scheduling Order and no later when it

produces its Jencks Act materials (Docket No. 25, Gov't Response at 1, 3).

This Court believes that fundamental fairness and the constitutional due process

requirements which underlie <u>Brady</u> mandate that the court have some discretion with respect to

the timing of the disclosure of such information, even if it may be considered combined

<u>Brady</u>/Jencks material.  Indeed, even with respect to purely Jencks Act materials, the Second

Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, . . . sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial . . . so that those abhorrent lengthy pauses at trial to examine documents can be avoided." United States v. Percevault, 490 F.2d 126 (2d Cir. 1974); United States v. Green, 144 F.R.D. 631 (W.D.N.Y. 1992) (Heckman, Mag. J.).

The instant case does not appear to be unusually complex.  Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendant to have a fair opportunity to utilize the information at trial) is sufficient in this case.

B.      Identity of Informants

Defendant seeks the pre-trial disclosure of the identity of any informants in this case (Docket No. 23, Def. Atty. Aff. ¶¶ 15-26).  The Government counters that it provided Title III applications to defendant revealing the particulars of information provided by many of the informants in this case (Docket No. 25, Gov't Response at 4) and further requests for disclosure would be addressed in the Government's Brady and Jencks Act productions in the future (id. at 5).  The Government is not required to furnish the identities of informants unless it is essential to the defense.  Raver v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.) cert. denied 489 U.S. 1089 (1988).  Nor does Rule 16 require the Government to disclose the names of witnesses prior to trial.  United States v. Bejaia, 904 F.2d 137, 139 (2d. Cir.) cert. denied, 498 U.S. 921 (1990).  Moreover, the Government has stated that

15

it believes that disclosure of the informant's identification would subject the informant to personal danger from retribution by the defendant and others.

Defendant has not established that the pre-trial disclosure of the identities of any informants is essential to his defense.  This request is **denied**.

C.      Rule 404(b) Disclosure

Defendant next requests disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b) (Docket No. 23, Def. Atty. Aff. ¶¶ 27-29).  Rule 404 requires that the defendant be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial."  The Government has represented that, if such information becomes available, the Government intends to offer it at trial and will provide this information as ordered by the trial Court (Docket No. 25, Gov't Response at 8). **This is sufficient in this case**.

D.      Discovery and Disclosure

Defendant next seeks production of various items of discovery–tangible items; search warrant application and inventory of items seized pursuant to the warrant; reports of examinations and tests; and relevant statements, other documents (Docket No. 23, Def. Atty. Aff. ¶¶ 30, 33-34, 37, 39) as well as notice of the evidence the Government intends to use at trial (id. ¶¶ 31-32) and notification of any intent to offer identification evidence (id. ¶¶ 35-36).  He notes that the Government made extensive disclosure during voluntary discovery (id. ¶ 30).

The Government responds that it fulfilled its Rule 16 obligations and will continue to do so when Rule 16 material becomes available (Docket No. 25, Gov't Response at 5-6).  The

Government contends that several unspecified requests made by the defense fall outside the purview of Rule 16 (id.).  The Government also will forward to defense the identities of expert witnesses as they become available, identifying now two firearms experts and a fingerprint expert (id. at 6, 6-7).  The Government notifies defendant that it intends to use all evidence disclosed to him, including statements made to law enforcement upon defendant's arrest, all evidence found from the search of his residence, and other evidence collected (id. at 7).

E.      Disclosure of Jencks Act Material

Defendant seeks disclosure of material subject to the Jencks Act, 18 U.S.C. § 3500, at least thirty days before trial (Docket No. 23, Def. Atty. Aff. ¶ 38).  The Jencks Act governs the disclosure of information and statements relating to the Government's witnesses.  Generally, according to the Jencks Act, the Government need not disclose such information regarding its witnesses until after the witness has testified at trial.  In this case, the Government agrees to produce this information pursuant to the pretrial Order of the trial court (Docket No. 25, Gov't Response at 6).  Defendant has not established that prior disclosure of Jencks material any earlier than when the Government proposes to provide it is essential to the preparation of a defense in this case.

E.      Search of Witness Agents' Personnel Files

Defendant next seeks at least in camera inspection of the personnel files of Government agents the Government intends to produce as witnesses (Docket No. 23, Def. Atty. Aff. ¶¶ 41-44).  The Government argues that such a search is not supported by the law but it recognizes its obligations under Brady and Giglio to provide responsive impeachment materials (Docket No. 25, Gov't Response at 15).  The Government **is directed to review these files** to determine

if <u>Brady</u> or Jencks material is present.  **Any responsive information, if any, should be treated as <u>Brady</u> or Jencks material (as appropriate) and disclosed accordingly**.

      F.     Preservation of Evidence

Defendant also has requested preservation of rough notes and other evidence taken by law enforcement agents involved (Docket No. 23, Def. Atty. Aff. ¶¶ 45-48).  The Government does not specifically address this request, possibly falling outside the purview of Rule 16 (<u>cf.</u> Docket No. 25, Gov't Response at 5-6).  The purpose for this motion is to preserve evidence against governmental record retention and destruction policies, <u>see</u> <u>United States v. Buffalino</u>, 576 F.2d 446 (2d Cir.), <u>cert. denied</u>, 429 U.S. 928 (1978) (Docket No. 23, Def. Atty. Aff. ¶ 47).  The Government **should endeavor** to preserve rough notes and other evidence that has not already been lost.

      G.     Disclosure of Residual Exception Statements

Defendant next seeks disclosure of residual exception statements under Federal Rule of Evidence 807 (Docket No. 23, Def. Atty. Aff. ¶ 49).  The Government again does not specifically responds to this request, possibly having it covered by its statement that many of defendant's requests fell outside the purview of Rule 16 (<u>cf.</u> Docket No. 25, Gov't Response at 5-6).  If such statements exist and are in the Government's custody, the Government **should disclose them**.

**CONCLUSION**

Based upon the above, it is recommended that defendant's motion (Docket No. 23) to suppress his statements and items seized be **granted**.  Defendant's motions for discovery and other disclosure (<u>id.</u>) are **granted in part, denied in part** as stated above.

18

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
October 17, 2008