UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                              DECISION AND ORDER
              v.                              08-CR-68A

CHARLES M. FELIX,

                        Defendant.

## INTRODUCTION

The defendant, Charles Felix, is charged with violating 18 U.S.C.

§ 922(g)(1) and § 924(a)(2), that is, being a prior felon in possession of a firearm

and ammunition.  The matter was referred to Magistrate Judge Hugh B. Scott for

pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1).

On June 18, 2008, the defendant filed a motion to suppress a .22 caliber

semi-automatic rifle seized from his residence during a search conducted on

February 10, 2007 and statements made on that date.  The government filed a

response in opposition to the motion to suppress and on August 7, 2008,

Magistrate Judge Scott held a hearing on the motion.  On October 17, 2008,

Magistrate Judge Scott filed a report and recommendation recommending that

the motion to suppress be granted.

The government filed objections to the report and recommendation and the defendant filed a response.  On January 8, 2008, this Court heard oral argument on the government's objections.


## **BACKGROUND**

For the purposes of this Decision and Order, familiarity with the facts of the case and the Magistrate Judge's report and recommendation is presumed. However, pertinent facts are summarized very briefly below.

On February 10, 2007, Buffalo police officers received a tip from a local delicatessen owner that a man known as "Felix" had attempted to sell him a rifle. The delicatessen owner told Buffalo Police Officer Michael Beavers that Felix lived in a house near the delicatessen and that Felix had intended to come back later that day to complete the transaction.  The deli owner showed Officer Beavers a surveillance videotape from a few weeks earlier when the defendant had been in the delicatessen.  As a result of viewing the surveillance tape, Officer Beavers knew what the defendant looked like.

Acting on that information, the officers set up surveillance near the delicatessen.  Officer Beavers was also there and saw a man who looked like the person from the delicatessen videotape exit a house at 92 Sherman Street, which was just down the street from the deli.  Officer Beavers identified the man as the same person from the delicatessen videotapes, after which other officers pulled

2

up to the defendant (who was walking in the opposite direction of the deli) and with weapons drawn conducted a <u>Terry</u> stop.

The defendant was searched but no weapon was found.  Rather than let the defendant go free, the officers decided to detain the defendant while continuing their investigation.  They placed him in the back of a patrol car and drove him to his house at 92 Sherman Street.

While *en route* to 92 Sherman, the defendant asked "what's going on?" to which the officers responded that they were looking for a gun.  The defendant told the police that his girlfriend bought the rifle and that he was trying to sell it to the "Arab on the corner."  The defendant also told officers that the weapon was in his house at 92 Sherman Street.  When the officers arrived at that address, they continued to detain the defendant in the back of the police car (across the street) while other officers approached the defendant's girlfriend (who also resided at that address and was at home at the time) if she would consent to a search of the house.  The defendant's girlfriend did consent and in fact signed a Written Consent to Search form.  Upon searching the house, the officers discovered the .22 caliber rifle that the defendant now seeks to suppress.

## **DISCUSSION**

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a <u>de</u> <u>novo</u> determination of those portions of the Report and Recommendation to which

3

objections have been made.  Upon de novo review and after reviewing the submissions of the parties and hearing oral argument, the Court hereby adopts Magistrate Judge Scott's report and recommendation and finds that the motion to suppress should be granted in its entirety.

The Court agrees with Magistrate Judge Scott's determination that the continued detention of the defendant after it was determined that he did not have a weapon was illegal.  Because the defendant was illegally detained, any statements made during the period of illegal detention are inadmissible. Florida v. Royer, 460 U.S. 491, 501 (1983); Wong Sun v. United States, 371 U.S. 471, 416 (1963).

In support of its contention that the continued detention of the defendant was not illegal, the government relies primarily on the Second Circuit's holding in United States v. McCargo, 464 F.3d 192 (2d Cir. 2006).  In McCargo, police investigating a robbery approached the defendant to conduct a Terry stop.  The Second Circuit found that, after conducting the initial Terry stop, it was proper for the police officers to put the defendant in their police car and transport him to the scene of the robbery for possible identification.  The Circuit further held that the officers did not violate the Fourth Amendment when they conducted a limited frisk for weapons before placing McCargo in the back of their police car.  Id., at 202.

As part of its holding that the police were lawfully entitled to transport the defendant to the scene of the robbery for possible identification, the Circuit held

that "in some circumstances, police may transport a suspect short distances in aid of a <u>Terry</u> stop." <u>Id</u>. at 198.  Relying on this language, the government argues that, even after discovering that the defendant was unarmed, it was reasonable for the officers to place the defendant in the back of the police car, transport him back to his house at 92 Sherman, and continue to detain him while other officers attempted to search his house.

<u>McCargo</u> makes clear that it is permissible for police officers to transport a suspect to a nearby  crime scene for the purpose of conducting a show-up identification.  <u>McCargo</u>, 464 F.3d at 199; <u>see also,</u> <u>Gil v. County of Suffolk,</u> 590 F.Supp. 2d 360 (E.D.N.Y. 2008); <u>Dempsey v. Town of Brighton</u>, 749 F.Supp. 1215, 1224-26 (W.D.N.Y. 1990), <u>aff'd</u>, 940 F.2d 648 (2d Cir. 1991).  However, in this case, the police did not transport the defendant to facilitate an identification.  Therefore, <u>McCargo </u>is distinguishable.  To suggest that <u>McCargo</u> permits officers to transport and continue detaining a suspect anytime doing so would aid a <u>Terry</u> stop simply interprets the decision too broadly.  Central to the Circuit's holding in <u>McCargo</u> was its determination that it was reasonable for officers to transport  a potential robbery suspect to the scene of the crime for a show-up identification, particularly where doing so would  "shorten the length of the Fourth Amendment intrusion." <u>McCargo</u>, 464 F.3d at 199.  <u>McCargo</u> did not give police officers license to unnecessarily *lengthen* the Fourth Amendment intrusion in order to transport the defendant when doing so, while helpful to the police investigation,

5

was unnecessary to serve the initial purpose of the <u>Terry</u> stop.  Here, the officers'
authority to conduct their <u>Terry</u> stop was premised upon their suspicion that he
might be armed with a weapon that he was attempting to sell illegally.  Once it
was determined that the defendant did not have the weapon on his person, the
basis for the Fourth Amendment seizure dissipated, as the Magistrate Judge
held, and the defendant should have been released.  This is not to say that the
officers were required to cease their investigation of the defendant.  It is only to
say that the officers' basis for continuing to "seize" the defendant no longer
existed.  The officers were free to continue their investigation and even to obtain
consent to search the defendant's house (as they ultimately did in this case).
However, they were not free to hold the defendant indefinitely in the back of their
police car while that investigation continued.

The government argues that the continued detention and transportation of
the defendant was necessary for officer safety.  It is of course permissible for
police to transport a suspect to a different location during a <u>Terry</u> stop where
safety and security concerns dictate.  <u>See</u>, <u>e.g.</u>, <u>United States v. Gori</u>, 230 F.3d
44, 56 (2d Cir. 2000) ("<u>Terry</u> confirms that an investigatory stop entails more than
the governmental interest in investigating crime; there is also the more immediate
interest of the neutralization of danger to the policeman in the investigative
circumstance.") (internal quotations omitted) (collecting cases).  However, the
Court is unpersuaded that officer safety required the transportation that occurred

6

in this case.  At the time that the officers placed the defendant in the police car and transported him back to his house, they had already determined that he was unarmed.  Therefore, any immediate threat to officer safety had been dispelled.

Rather than McCargo, the Court finds that this case is more analogous to United States v. Butler, 223 F.3d 368 (6th Cir. 2000).  In Butler, the Sixth Circuit held that suppression was warranted when police officers, acting upon information that the defendant may be engaged in drug activity, continued to detain the defendant after the Terry stop failed to yield any evidence of criminal activity.  The Circuit explained:

> [W]e hold that the district court erred in denying Defendant's motion to suppress the evidence where upon learning Defendant's identity and that she was not armed or carrying contraband (as determined by the patdown search), the Redford Police officers unreasonably seized Defendant by placing her in the police car and questioning her further; transporting her to the police station; detaining Defendant while at the police station; and questioning her further once there. Although the officers properly relied upon [information indicating that Defendant was] suspected as being involved in drug trafficking so as to justify the initial stop of the cab once Defendant identified herself, answered the officer's questions, and consented to the patdown which did not reveal anything suspicious, the officers were required under the Fourth Amendment to allow Defendant to go free.  In fact, Officer Hanish testified that at the time he placed Defendant in the back of the patrol car, he had found nothing about the stop that led him to believe that Defendant was involved in drug activity. The officer's continued detention of Defendant in the back of the locked patrol car ripened the investigatory stop into an arrest; and because the officers did not have probable cause to arrest Defendant at that time, the seizure was illegal.

Id. at 375 (internal citations omitted).  The Sixth Circuit went on to clarify that "the stop became illegal once Defendant was placed in the back of the patrol car"  id. at 376, because it has long been recognized that "officers cross the line from an investigatory stop into an arrest when they place a suspect in a police vehicle for questioning" without probable cause to do so.  Id. at 375.  See also United States v. Richardson, 949 F.2d 851, 857 (6th Cir. 1991) (holding that Terry stop ripened into an illegal arrest when the agents placed the defendant in the back of the police car after he had refused to consent to a search of his storage locker).

Accordingly, for the reasons stated herein and by Magistrate Judge Scott, the Court finds that the detention of the defendant in the back of the police car was illegal and as a result, any statements made by the defendant while he was illegally detained must be suppressed.

The Court also adopts Magistrate Judge Scott's determination that the officers' decision to search the defendant's residence was based upon the statements that he made while he was illegally detained.  The government argues that consent given by the defendant's girlfriend to search the house was sufficiently attenuated from the defendant's statements so as to provide an independent basis for admission.  The Court does not agree.  The Supreme Court has articulated three factors to be considered in determining whether the causal chain has been sufficiently attenuated to dissipate the taint of illegal conduct: (1) the time that elapsed between the illegality and the acquisition of the

8

evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct.  See Brown v. Illinois, 422 U.S. 603-04 (1975).  Ultimately, the issue turns on whether the evidence was obtained "by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."  See Wong Sun, 371 U.S. at 488.

The government has failed to show that the evidence was obtained "by means sufficiently distinguishable to be purged of the primary taint."  Id.  In fact, the evidence at the suppression hearing indicated that the decision to search 92 Sherman was made only after the defendant told the officers that the weapon was in his house.  It was at that point that officers sought to obtain his girlfriend's consent to search 92 Sherman Street.  There was no testimony indicating that the officer's had planned to search the residence before the statements were made.  Accordingly, the Court finds that the gun which was discovered by exploitation of the tainted statements as such must be suppressed.

## **CONCLUSION**

For the reasons stated, the Court grants defendant's motion to suppress in its entirety. The parties shall appear before this Court on Thursday, February 26, 2009, at 9:00 a.m. for a status conference.

SO ORDERED.

s/ *Richard J. Arcar*a
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED:  February 25, 2009